# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MICHELS HOLDINGS, INC. and
MI-TECH SERVICES, INC.,

      Plaintiffs,

v.                           **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 14-211 (MJD/JSM)

PROFESSIONAL DRAIN SERVICES, INC.,

      Defendant.

PROFESSIONAL DRAIN SERVICES, INC.,

      Plaintiff,

v.                           **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 14-708 (MJD/JSM)

MICHELS CORPORATION,

      Defendant.

Daniel A. Manna and Michael B. Brennan, Gass Weber Mullins LLC, and Erik T. Salveson and Benjamin C. Johnson, Nilan Johnson Lewis PA, Counsel for Michels Corporation, Michels Holdings, Inc., and Mi-Tech Services.

Richard W. Huffman, Craig D. Greenberg, and James T. Smith, Huffman Usem Crawford & Greenberg, Counsel for Professional Drain Services, Inc.

1

## I.     INTRODUCTION

This matter is before the Court on motions in two related cases. In Civil File No. 14-211, Defendant Professional Drain Services, Inc. has filed a Motion to Stay Proceedings. [Docket No. 16] In Civil File No. 14-708, Plaintiff Professional Drain Services, Inc. has filed a Motion to Compel Arbitration. [Docket No. 4] The Court heard both motions on July 18, 2014. In accordance with the Court's oral ruling during that hearing, the Court grants both motions and issues the following Memorandum of Law & Order.

## II.    BACKGROUND

### A.     Factual Background

Professional Drain Services, Inc. ("PDS") is a small Minnesota corporation that provides lateral sewer pipeline inspection. (Civil File No. 14-708 [Docket No. 12] Huffman Aff., Ex. C, Second Am. Arbitration Complaint ¶ 5.) PDS used to work as a contractor for CenterPoint Energy Resources Corp. ("CenterPoint") doing lateral pipeline inspection work. (Id. ¶ 10.) CenterPoint then decided that, rather than directly contracting for lateral pipeline inspection services, it would include lateral pipe inspection work as a subpart of prime contracts that CenterPoint entered with gas pipeline installation contractors. (Id. ¶ 11.) Therefore, PDS submitted a bid to be a contingent subcontractor for Michels

Corporation ("Michels Corp."), a Wisconsin corporation that performs construction and engineering services, to perform lateral pipeline inspections for Michels Corp. if Michels Corp. was awarded the CenterPoint prime contract. (Id. ¶¶ 6, 12.)

On January 31, 2012, PDS and Michels Corp. entered into a Subcontractor Agreement ("Subcontract"). The Subcontract provides:

> Any dispute or claim between Contractor [Michels Corp.] and Subcontractor [PDS] arising out of or relating to this Agreement shall, at Contractor's sole option, be resolved by ~~litigation~~, binding arbitration in accordance with ~~Wisconsin Statutes Chapter 788~~ *Minnesota Statutes Chapter 572B*, or the dispute resolution clause of the Prime Contract. Subcontractor does not object to and consents to the joinder and participation of any person or entity in an arbitration involving Contractor and Subcontractor that arises out of or relates to the Project, this Agreement or the Work. Pending a final determination of a dispute or claim, Subcontractor shall proceed diligently and expeditiously with the Work in accordance with the Contract Documents. All Subcontractor claims relating to entitlement to additional monies or the amount thereof shall be presented to Contractor in writing within seven (7) days of the event or condition giving rise to the claim or else such claim shall be deemed expressly waived and time barred.
>
> This Agreement shall be deemed to have been entered into and consummated in the State of ~~Wisconsin~~ *Minnesota* and shall be governed by and construed pursuant to the laws, without regard to the law of conflicts, of the State of ~~Wisconsin~~ *Minnesota*. ~~The Dodge County Circuit Court in the State of Wisconsin shall have exclusive jurisdiction and venue over any dispute arising hereunder. To the~~

~~fullest extent permitted by law, jury trial is waived by all parties hereto.~~

(Civil File No. 14-708 [Docket No. 11] Lee Aff., Ex. A, Subcontract Agreement § 21.)

The Subcontract further provides: "Contractor [Michels Corp.] agrees that Contractor will not, directly or indirectly, hire or solicit to hire, any of Subcontractor's [PDS's] employees." (Id. § 33.)

On April 1, 2012, Michels Corp. entered into a Prime Contract with CenterPoint. (Lee Aff., Ex. B, Prime Contract.) The Prime Contract does not contain a dispute resolution clause. (Id.)

On October 22, 2013, PDS served Michels Corp. and two of its affiliates, Michels Holdings, Inc. ("Michels Holdings") and Mi-Tech Services, Inc. ("Mi-Tech"), with a Demand for Arbitration and Complaint. (Huffman Aff., Ex. A, Arbitration Complaint.) PDS alleged that Michels Corp. had conspired with Michels Holdings, which owns or is related to Michels Corp., and Mi-Tech, a subsidiary to or related entity to Michels Corp., to breach the Subcontract, to tortiously interfere with the employment agreements of former PDS employees hired by Mi-Tech, and to misappropriate PDS's trade secrets. PDS asserted that Michels Corp. registered Mi-Tech in Minnesota to begin doing lateral pipeline

4

inspection business in competition with PDS and diverted CenterPoint lateral pipeline inspection business to Mi-Tech, even though the Subcontract required Michels Corp. to give all lateral inspection work in Minnesota with CenterPoint to PDS.  (Id. at ¶ 14.)  PDS requested money damages and injunctive relief against Michels Corp., Mi-Tech, and Michels Holdings.  Initially, Michels Corp., Michels Holdings and Mi-Tech all refused to arbitrate.  (Huffman Aff. ¶ 3.)

Michels Corp. participated in the process of selecting the arbitrator, retired Judge Steven Lange.  (Civil File No. 14-708 [Docket No. 15] Salveson Aff. ¶¶ 8-9; Salveson Aff., Ex. F.)

On January 22, 2014, Michels Holdings and Mi-Tech commenced a declaratory judgment action against PDS in this Court.  Civil File No. 14-211. They seek a declaration that they are not subject to arbitration and that they did not engage in the tortious interference and unfair competition alleged by PDS in the arbitration demand.

PDS responded by offering to stipulate that Michels Holdings and Mi-Tech were not subject to arbitration with PDS.  (Salveson Aff., Ex. D.)  Michels Corp. retorted that it would proceed with arbitration with PDS only if PDS first

dismissed its claims against Mi-Tech and Michels Holdings with prejudice and on the merits and provided a release. (Id.)

On February 5, 2014, PDS served Michels Corp. with an Amended Demand for Arbitration and Complaint naming only Michels Corp. as a defendant. (Huffman Aff., Ex. B, Am. Arbitration Complaint.) The Amended Arbitration Complaint continued to seek injunctive relief against Michels Corp. "both alone and through its subsidiary, Mi-Tech," from taking certain actions. (Id. at 13-14.) PDS continued to allege that Michels Corp. acted through Mi-Tech as its subsidiary to hire PDS employees and appropriate PDS's trade secrets.

On February 28, 2014, PDS again amended its Arbitration Demand and Complaint, still solely against Michels Corp., and sought injunctive relief against Michels Corp. "directly and indirectly" from taking certain actions, but asserted the same factual allegations that Michels Corp. was acting through Mi-Tech. (Huffman Aff., Ex. C, Second Am. Arbitration Complaint.) Also on that date, PDS filed a Counterclaim against Mi-Tech in Civil File No. 14-211 asserting that Mi-Tech had committed tortious interference with contract, misappropriation of trade secrets, unfair competition, and tortious interference with prospective business advantage.

On March 4, 2014, PDS filed a Minnesota Statute § 572B motion in Minnesota state court to compel Michels Corp. to arbitration. On March 13, Michels Corp. removed the matter to this Court. Civil File No. 14-708.

On March 25, 2014, PDS served a 9 U.S.C. § 4 Notice on Michels Corp. to compel it to arbitration under federal law. (Huffman Aff. ¶ 7; Huffman Aff., Ex. E.)

### B.  Procedural History

Now, in the action to compel arbitration, Civil File No. 14-708, PDS brings a motion for a Court order compelling Michels Corp. to arbitrate.

In the declaratory judgment action, Civil File No. 14-211, PDS brings a motion to stay the action pending the completion of arbitration between PDS and Michels Corp.

## III.  DISCUSSSION

### A.  Motion to Compel Arbitration

#### 1.  Whether Minnesota or Federal Law Applies

"The construction of an agreement to arbitrate is governed by the FAA [Federal Arbitration Act] unless the agreement expressly provides that state law should govern." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 729 n.9 (8th Cir. 2001) (citing UHC Mgmt. Co., Inc. v. Computer Sciences Corp.,

7

148 F.3d 992, 997 (8th Cir. 1998)). The Court concludes that the Minnesota Uniform Arbitration Act ("MUAA"), Minn. Stat. § 572B.07, applies because the arbitration clause in the Subcontract not only provides that the Subcontract "shall be governed by and construed pursuant to the laws, without regard to the law of conflicts, of the State of Minnesota," but also explicitly invokes binding arbitration "in accordance with Minnesota Statutes Chapter 572B." (Subcontract § 21.) This language is not a generic choice-of-law clause, but rather a specific clause demonstrating the parties' intent that the arbitration be conducted subject to the MUAA. In any event, the outcome of this motion is the same, regardless of whether Minnesota law or the FAA applies.

### 2. This Court Should Decide Arbitrability

Whether under the MUAA or the FAA, this Court "must decide whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement." City of Duluth v. Local 101 Int'l Ass'n of Firefighters, No. A11–1494, 2012 WL 2202950, at *3 (Minn. Ct. App. June 18, 2012) (citations omitted); see also Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001) (same).

> Federal and Minnesota law favor arbitration as an alternative to litigation. Under the FAA and Minnesota law, a court must stay the

8

proceedings and compel arbitration of claims subject to arbitration under a valid agreement.

Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, LLP, 643 N.W.2d 333, 336 (Minn. Ct. App. 2002) (citations omitted).

### 3. A Valid Agreement to Arbitrate Exists

First, the Court holds, and the parties agree, that a valid agreement to arbitrate exists between PDS and Michels Corp.

### 4. The Specific Dispute Falls Within the Substantive Scope of the Agreement to Arbitrate

Second, the Court holds that the dispute set forth in the Second Amended Arbitration Complaint falls within the substantive scope of the agreement to arbitrate.

Under the arbitration clause, "[a]ny dispute or claim between [Michels Corp.] and [PDS] arising out of or relating to [the Subcontract] shall, at [Michels Corp.'s] sole option, be resolved by binding arbitration." PDS's Second Amended Arbitration Complaint asserts claims and remedies only against Michels Corp. and only arising out of or relating to the Subcontract. Michels Corp. protests that there are factual allegations related to Mi-Tech and Michels Holdings in the Second Amended Arbitration Complaint. But so long as there is

no attempt to force Mi-Tech or Michels Holdings into arbitration or seek a remedy against them in the arbitration award, then there is no reason to deny the motion to compel arbitration. See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983) ("Under the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.") (footnote omitted). Moreover, under a broad arbitration clause such as the one in this case, an arbitrator is empowered to decide whether a signatory to the arbitration agreement breached the contract by acting through a third party, such as an alter ego. See, e.g., Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1058–59 (3d Cir. 1991).

PDS's current arbitration complaint, asserted solely against Michels Corp., is clearly within the bounds of the agreement to arbitrate.

### B. Motion to Stay Declaratory Judgment Action

The Court grants PDS's request to stay the declaratory judgment action brought by Michels Holdings and Mi-Tech against PDS and the corresponding counterclaims by PDS against Mi-Tech pending arbitration between PDS and Michels Corp.

The Court "has discretion to stay third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement." <u>AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co.</u>, 242 F.3d 777, 782 (8th Cir. 2001).

> In a complex, multi-party dispute of this type, issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay.

<u>Id.</u> 783 (citations omitted).

Although Michels Holdings and Mi-Tech are not signatories to the arbitration agreement, this Court "has discretion to stay **<u>third party</u>** litigation [that] involves common questions of fact that are within the scope of the arbitration agreement." <u>AgGrow Oils</u>, LLC, 242 F.3d at 782 (emphasis added). There is no doubt that the declaratory judgment action is a response to PDS's attempt to arbitrate with Michels Corp. based on the same factual scenario. There is a strong risk of inconsistent rulings if the arbitration proceeds at the same time as this federal litigation, both addressing actions allegedly taken by Mi-Tech with regard to PDS and the lateral sewer inspections subject to the Subcontract. It is clear from the records in both cases that PDS's arbitrable claims against Michels Corp. form the heart of the overall disputes among the parties.

11

The Court finds little risk of prejudice from a delay.  There is also the possibility that the resolution of the arbitration will lead to a resolution in this case.  Balancing all of these factors, the Court concludes that a stay is warranted.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. In Civil File No. 14-211, Defendant Professional Drain Services, Inc.'s Motion to Stay Proceedings [Docket No. 16] is **GRANTED**. This matter is stayed until the arbitration ordered in Civil File No. 14-708 is completed.

2. In Civil File No. 14-708, Plaintiff Professional Drain Services, Inc.'s Motion to Compel Arbitration [Docket No. 4] is **GRANTED**.

Dated:  July 22, 2014                    s/ Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court